In the Matter of Robert W.
SNYDER, Debtor.

Howard R. SELZ & Marian
Witry, Plaintiff,

v.

Robert W. SNYDER, Defendant.

Bankruptcy No. 82–1802.
Adv. No. 84–236.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 8, 1986.

Howard Selz, pro se.

R.C. Fernon, Tampa, Fla., for plaintiff, Witrey.

Bryan A. Kutchins, Oldsmar, for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a contested discharge proceeding and the matter under consideration is a claim asserted by Howard R. Selz and Marian Witry that Robert W. Snyder (Debtor) is not entitled to a discharge or, in any event, the debt owed by the Debtor to these Plaintiffs should be declared to be non-dischargeable. The Objection to Discharge is based on § 727(a)(3), (5); (c)(1) which basically alleges, albeit not very articulately, that the Debtor failed and "now refuses to produce adequate accounting and financial records;" that "he is unable to verify (sic) his inability to honor certain contracts;" and that "he failed to adequately explain a loss of the Plaintiffs' investment proceeds."

The claims of non-dischargeability asserted by the Plaintiff are based on § 523(a)(2), alleging that the Debtor made false statements and thereby obtained property from the Plaintiffs. The Plaintiffs also contend that the Defendant acted as a fiduciary; that he breached his duty as a fiduciary; and therefore, he is prohibited by § 523(a)(4) from obtaining a release through the bankruptcy discharge of the debt owed by him to these Plaintiffs.

The record, as established at the originally scheduled final evidentiary hearing, failed to present any evidence whatsoever to sustain a claim under § 727(a) and, therefore, the Court announced that the Counts of the Complaint based on § 727(a) would be dismissed with prejudice. This left for consideration the claim of non-dischargeability based on § 523(a)(2) & (4) and the hearing was continued for the limited

purpose of permitting the Plaintiffs to present additional evidence to support their claim of fraud.

The evidence presented at the continued final evidentiary hearing reveals that at the time relevant to the matter under consideration the Debtor was engaged as a radio broadcaster aiming his program primarily to religious oriented listeners. In addition, the Debtor also published a newsletter which was directed to his listeners. While the Debtor was primarily engaged in the sale of dehydrated food, this activity played no part in the matter under consideration which centers around his dealing in precious metals, primarily in gold coins known as Krugerrands.

His radio program, as well as his newsletter, was heavily laced with doomsday prophecies stating that because of the galloping inflation, the entire western economy would shortly collapse and, therefore, the only salvation was to invest in precious metals. For instance, he predicted that because of the uncontrolled inflation, to buy gold at $900 per ounce would be an absolute steal and the purchase of gold would be the thing to do. He also stated that the purchase of an ounce of silver for $40 would be a great bargain. In his broadcast and newsletter he stated that "we are ahead by 120% inflation and the complete devastation (sic) of the American dollar". While there is evidence that the Debtor engaged in some informal study of economics, there is no evidence in this record which would warrant the inference that he made these predictions knowing that they would never happen. Thus, it was not much more than merely sales puffing or promises, neither of which would rise to the level of actionable fraud.

Marian Witry entered into a written agreement to purchase U.S. silver coins, face amount $615, for $6,642. On March 16, 1981, Ms. Witry paid the full purchase price in the form of two checks totaling $1,602 and ten Krugerrands which were purchased earlier from Snyder and valued at $5,040. Delivery, per agreement, was to be on or before April 14, 1981. After April 14, Ms. Witry called Snyder's office a number of times and was told that there was a shortage of silver, that it was hard to get, and, on other occasions, that he was short of help and did not have anyone to go to the vault to get the coins. Despite the fact that Ms. Witry never received delivery of her silver coins, she did not request the return of her check and gold coins, and, in fact, entered into a second contract on November 12, 1981 to purchase six Krugerrands for the purchase price, fully paid, of $2,670. She was to receive, in addition, dehydrated foods in the amount of $110. The Krugerrands and food were to be delivered on December 11, 1981. Ms. Witry contacted Snyder on December 12, 1981 and was told that Snyder could not get either the Krugerrands or food. Ms. Witry has not since received that delivery either.

On October 27, 1980, Mr. Selz entered into a written contract with Snyder to purchase two Krugerrands and $200 in face value of U.S. silver coins for a total purchase price of $4,176. Delivery was somewhat later than the scheduled November 12, 1980 date.

On August 13, 1981, Mr. and Mrs. Selz entered into a written agreement to purchase one Krugerrand and U.S. silver coins in the face amount of $391 for a total purchase price of $4,001.90. These coins were never delivered and when the Selzs contacted Snyder, they were told that employees didn't have time to compute the shipment and, later, that Snyder was short of help and couldn't get to the vault. Selz did not demand that his money be returned and, in fact, on October 28, 1981, in response to Snyder's publicized offer to rebuy coins, turned over the gold and silver he had purchased under the terms of the 1980 contract and was to receive $4,593 for the repurchase. The Selzs have never received either the coins or the repurchase price.

It is clear from the foregoing that the Debtor did not, in fact, make any false statements as to an existing fact and the most which could be said is that he made predictions and made promises to do cer-

tain things in the future. This being the case, there cannot be any viable claim of non-dischargeability unless the Plaintiffs established, with the requisite degree of proof, that at the time these promises were made by the Debtor he either knew that he could not fulfill the promises or he had no intention of fulfilling the promises made. The most that can be said from this record is that the Debtor sold precious metals and Krugerrands to the public through radio advertisement and promised in certain instances that he would repurchase the merchandise and would pay a bonus ranging from 10% to 20% on the price paid by the purchaser.

Based on this record, it is clear that the Plaintiffs failed to establish the claims and, therefore, the claim of non-dischargeability should be dismissed.

A separate final judgment will be entered in accordance with the foregoing.